The court now calls case 117811 D'Angelo M. Kauper v. Randy Nyberg. Are you ready to proceed? Yes, Your Honor. Ready? Yes, Your Honor. Good morning, Your Honors. My name is Joe Plyer. I'm here representing Randy Nyberg, who happened to be in the court with me today. He's the Circuit Clerk of Sleem County, and Keith Brown, the Sheriff of Sleem County. We're here asking this honorable court to reverse the decision entered herein in the Fifth District and to affirm the trial court's dismissal of the plaintiff's complaint. I'm well aware that the court has read the briefs and has been provided the factual basis of this case, but I want to start out with just highlighting a few very important facts of the case that I think would be significant for allowing this court to decide the case. The important facts in this case are, one, that on May the 12th of 2011, Mr. Kauper pled guilty to a 2003 felony there in Sleem County. On June the 1st of 2011, a judgment sentence was filed in the Circuit Court, and on June the 2nd of 2011, he was transferred to the Illinois Department of Corrections. The Sheriff of Sleem County, Keith Brown, as required by the statute that we're discussing here today, provided to the Circuit Clerk the number of days that Mr. Kauper had been incarcerated in Sleem County Jail so that he would get appropriate time credited for the time he had served. It's not a white elephant in the room or anything like that. The facts are very simple. There was a miscalculation in this case of the number of days that Mr. Kauper was entitled to for the time he had served in Sleem County Jail. There's no question about that. That occurred, and I'm not going to run from that fact. But I also note that the fact in this case, as looked in the statute, that the Circuit Clerk, Brandy Nyberg in this case, and it's mentioned by Judge Lambert in his order, the Circuit Clerk didn't do anything other than what he was required to do under the statute. The statute is very clear that the Sheriff is to provide a certain number of days, a time to Brandy Nyberg, the Circuit Clerk. And under the sentencing statute that's in question, Brandy Nyberg then transmits that information to the Department of Corrections. But I think the last fact that I want to highlight in light of this particular case is that on June 23rd of 2011, which would be about three weeks after Mr. Kauper was transferred to the Department of Corrections, he filed a motion in his criminal case in Sleem County asking that the trial court, the criminal court that sent him, to recalculate the time that was provided to the Department of Corrections. And I think that's an important fact, and I'm going to come back to that issue because I believe, when we get to whether there's implied right, private cause of action, that Mr. Kauper's remedy in this case is not under the sentencing statute. His remedy in this case is what he did in the trial court when he found that the dates were incorrect. He filed his motion in the trial court asking the trial court to recalculate the time credit for that he served in Sleem County Jail to be transferred to the Department of Corrections. And I think we'll get into the private cause of action, but that is his remedy. And I think that's how the implied private right fails, on the basis that that is his remedy. A couple issues that I want to highlight in the Fifth District opinion that I believe that two issues that the Fifth District got it right in this particular case was on paragraph 10, page 5 of its opinion, and it states that Kauper has not cited, nor did the Fifth District find, any reported cases addressing whether an inmate can file a civil cause of action pursuant to this section of the sentencing code, the Code of Corrections 5-4-1E4. And further, on paragraph 13 of page 6 of the opinion, we find that the Code of Corrections fails to provide an inmate an express right to pursue a cause of action for an improper calculation of credit days served. I think there's without question, and even the Fifth District acknowledged it, that this statute that we're here about, the sentencing statute, fails to provide a cause of action, a private cause of action, on behalf of Mr. Kauper. And if you look at the statute, it's a sentencing statute, and this one subparagraph is one subparagraph, and there's 12 of them, and it talks about what the clerk of the court shall transmit to the department, the DOC, to which the defendant's committed the following information. And it goes through all kinds of things, like the sentence imposed, the statement of the court, any pre-sentence reports, etc., whether or not there was a vehicle involved. And you have to look at that in this particular case, because there is no cause of action by this section for a private individual. His remedy is what he tried to do in this state court. And looking at Judge Lambert's order, and I think his order is really concise and precisely what this case is about, this section, the 41EA, 41E, talks about what the duty of the clerk is, the circuit clerk. There's no allegations in the complaint, there's no allegations that the circuit clerk did anything in this particular case, Randy Nyberg, other than what he was supposed to do. There's no doubt, there's no question. He was provided some dates by the sheriff in this particular case, and he transmitted, as required by the Code of Corrections, he provided that to the Department of Corrections. That's the only duty the statute even provides that he is to perform, and he did it. And I say the problem with the opinion of the 5th District, or the sinister nature of it, is that the opinion of the 5th District, there's 102 counties in this state, there's 102 circuit clerks. If you read the opinion or allow a private cause of action, it requires the circuit clerk of each of the 102 counties to go out and make an independent investigation of information that's not readily available to the clerk. It's requiring the clerk to go second guess, second check, how many days someone's been in jail, how many days he's been incarcerated. It's not his department, or his or her department, I should say. It's not the circuit clerk's department. The circuit clerk is to transmit what is provided to him, and I think the harshness of allowing the 5th District opinion to stand in that regard requires would be the circuit clerk to undergo a further duty that's not required of him in the statute by verifying this information provided to him by the sheriff. Judge Lambert then lastly talks about, when he dismissed the complaint against Keith Brown, the sheriff, that there's no private right under this statute. And that's really the gist of the argument in this case, and that's what I think this court has to decide as to this private cause of action. This court, there's really three cases. This court has decided issues of whether or not there's an implied cause of action, the four-prong test. You're well aware of it. It's briefed in all the briefs. And in this particular court, in the case of Abassi, where it dealt with the Lead Poisoning Act, and this court found that there was no private right of action, implied private right of action by the Lead Poisoning Act. And I think it's very important, and there's a part of that, in that opinion, this High Court, as Justice Freeman talked about, the court has implied a right of action under statute only in cases, only in cases, where the statute would be ineffective as a practical matter unless a private right of action were implied. And I think that's very important, that this court only is going to imply a right of action, because the legislature, in this case, could have provided for it. The legislature could have provided that this court, or provided for a private cause of action. But you look at the purpose of the statute. It's a sentencing statute under the Code of Corrections. And it talks about the McNeil case. It says, the code primarily enacted, the correctional code, to provide courts with direction where imposing sentences with the desire to return an offender to useful citizenship. The cases that talk about the purpose of this act says the ultimate goal is to protect the public. The other case this High Court, the Supreme Court has decided, was the Fisher v. Lexington health case. That's where this court found that there was no implied right of private action under the retaliation of the Nursing Home Care Act. And the facts of that case are, you would think, if there was a reason to have a private cause of action when the legislature did not issue one, that would be the case under the facts. That was a case where a resident of the nursing home essentially choked herself on a half rail. The supervisor of nursing got the nurses together and tried to devise their story as to what happened. And the supervisor says, you're not supposed to talk to anybody. Well, one of these nurses then told the family as to what happened in this particular case. And eventually this nurse that told the family, basically wasn't a team player, was discharged, was fired. And it talks about the Nursing Home Act. One of the things of the act was to prevent the degrading of treatment of patients. And if there was not a private right of action, this court didn't find a private right of action in that case, there certainly cannot be an implied right of action in a case involving a sentencing statute, where there was one paragraph out of 12 subsections that would allow for a private right of action. That's not the primary purpose of the code, and that's not a primary purpose of this court to imply it. The only case that we can find that discusses this issue, or discusses this statute, is the McNeil v. Carter case. And even when you search or site check the statute, that's the only case that comes up. That's the only case that talks about it. And that's the case where it talks about the legislature intent of the Code of Corrections, what the intent was. It's to assist the judges in their sentencing. The sentencing of the Code of Corrections is a protection of the public. And it says a couple things. It's sort of like Justice Freeman in the Abbasi case. It says, the court should only infer a private cause of action cautiously. A private cause of action is only permitted if a statute would be ineffective without such relief. May I ask you that about adequate remedy? You earlier stated that the remedy that was available to this person was to petition the trial court to amend his minimums, correct? Correct. Did you make that argument in your brief? In the – it's in the facts, no. You didn't make this argument. In fact, the argument you made in your brief was that the Unified Code of Corrections provides an adequate remedy under Section 730 ILCS 53-8-8 for violation of the Code, and therefore it is unnecessary to infer a private right of action. Plenty could have utilized that remedy under the Grievance Code to resolve any alleged miscalculation. That was the argument you made in your brief, correct? Yes, ma'am. So you're making a new argument here today? I'm adding on to that argument, yes, ma'am. Okay. And that is because you have to find a private remedy, and it talks about the remedy was in the facts of the argument, it was in the facts of the brief, it's in the record, that he did in fact have a remedy in that regard, and that's the remedy that he chose, and that's the remedy that should be provided for this particular person. And also, also he had the other remedy, that he could have filed the grievance under the Corrections Code as set forth in the brief. And, of course, that is the argument that you made in your brief, and counsel had an opportunity to respond to that and pointed out that that Grievance Code has to do with misconduct while the person is incarcerated, and here this gentleman was not incarcerated when he filed this action, correct? That was the argument against the argument that you made in your brief. That is correct. He was not incarcerated when he filed the action, but he was incarcerated when he had that remedy to file his administrative relief once he got to the Department of Corrections under the code and the grievance procedure, and that would be his remedy once he figured out that he was incarcerated for the wrong time. Once he filed the thing in the circuit court and the circuit court didn't respond for whatever reason, he then goes to the Department of Corrections, and that section under the code that's cited in the brief, an argument brief, provides him relief at this court, that that's his relief under the statute. And I think you look at the necessity to provide an accurate remedy for violation of the legislature, the implied cause of action. There is remedies other than that, and I think that's where the plaintiff's or the Mr. Calvert's argument fails in this particular case because he had these remedies available. He had one, the petition, or two, he had this administrative remedy, the grievance procedure, once he got in the Department of Corrections, and he failed to do so. He failed to partake in his grievances or his remedies that he had available. This new argument that you're making, that the remedy that he had was to file a petition for the trial court, he did that. That's correct. And what happened? He never brought it to the attention. I don't know. But for some reason, his attorney, who was a public defender, failed to bring it to the court. It was filed? Yes, sir. Yes, ma'am, I'm sorry. Excuse me. Yes, it was filed. And, in fact, if you read the record, the state, after Mr. Calvert was out of jail, that's when the state finally responded to the petition and admitted that the time was incorrect. And that's when they determined that the state admitted that the dates were incorrectly calculated. And that was in November after he was discharged or released from custody in October. The plaintiff cites two cases, or three cases, Evans versus the Illinois Court of Claims case. And I note in that case that they talk about, and it's noted that the sentencing court was the source of relief. That's what the Court of Claims indicated to me. Also, in the Shaw case, the Seventh Circuit case, that the plaintiff should have, or the injured, or the complainant should have sought relief from the state court. And also the Patton case, which was the other Court of Claims case, and that had dealt with the false imprisonment case. So I think, in totality, if you look at the case law, you look at McNeill versus Carter, you look at the two previous cases that this Arnable Court has decided, the Fisher and the Abbasi case, that the legislature did not provide a cause of action. And if this court would find a private cause of action, the consequences could be, would have opened, because how could you find a cause of action under one section of the Code of Corrections? Then you would be flooded with any private action that an inmate could find. Any violation of the Code would provide a private right of action. You can't create a private right of action in this one subsection and then not open it up to the other sections of the Code of Corrections to allow inmates to bring private cause of actions. And I think, in closing, that since the legislature had the opportunity to provide a private cause of action, the legislature did not see fit to do so. This Arnable Court has held that it should only do so in very circumstances where there's not other remedies. I think there's applicable remedies in this case. In the broad spectrum, if they would have an implied private cause of action in this particular case, it would open the floodgates for all kinds of litigation under the Code of Corrections by inmates and all kinds of persons that are subject to the criminal code. Thank you. Thank you. Glenn. Good morning. The name of the court. Mr. Blier. My name's Andrew Flynn, and along with my co-counsel, Glenn Tetzlaff, we represent the plaintiff appellee in this matter, D'Angelo Kalper. I just wanted to touch on a few things Mr. Blier started off with about the facts, and you kind of got into it a little bit later. Mr. Kalper did file a motion to recalculate time served almost immediately after finding out that there was an error. That was not answered until five months later, or after it had already been released. And in that response, even though he received no benefit from it, they did admit, yes, we did recalculate your time served incorrectly. Here's your correct time served. But he had already been released. But doesn't that prove the point of opposing counsel? That is a remedy that was available to the defendant. He filed a motion. He prevailed on the motion, right? And he received no benefit. Yeah, unfortunately for this particular defendant, the timing didn't work out for the best. I agree with that. But that doesn't mean there's no adequate remedy available, that in this particular case, this particular defendant didn't benefit from utilizing that remedy. Does it? I mean, I would disagree on the basis that it requires an inmate to take, I mean, I think he, it's not on the record, but he informed his attorney, his attorney took whatever time it was to file the motion, get it filed. I think that was a 20-day period. That's still, there's a 20-day period where he's still in prison waiting for this to get corrected. If that were the case in the future, there's still going to be this time period where before the motion actually gets heard, there's going to be people waiting in prison with no recourse, never getting that time back. If that was the sole remedy, and I don't believe that is an adequate remedy in this case. Okay. There was just a few other things I wanted to touch on that Mr. Blyer mentioned. Part of the appellate court's decision regarding, or in there, they said that there's no cases that I cited or no cases that they could find. Of course, I believe this is a case of first impression, so there would be no cases that I could cite to that are specifically exactly on point. And the appellate court also found that the code failed to provide an express right of action, which we would agree, that's why we're here, to see if an implied right of action or cause of recourse is applicable to this case. Okay. Now, the defense argued that the clerk didn't do anything wrong that there was no alleged misconduct because he transferred the amount of days that he received from the sheriff. Now, that is the duty prescribed by the statute. However, in this case, we're at the pleading stage. So what numbers the clerk received from the sheriff, what numbers he transferred from the sheriff, are all questions of fact that we'll be able to get into later. But at this point, those are all unknown. Well, if the clerk forwarded what the sheriff gave him or her, is that sufficient to take the clerk out of this case? Yes, I would agree that that's the case. However... So you're not saying that the clerk has an independent duty to verify or fact check what the sheriff hands to the clerk? That's correct, Judge. I agree with that 100%. I think right now we have to keep both parties in the case because we don't know what was transmitted to the clerk and we don't know what the clerk transmitted to the Department of Corrections. Again, those questions of fact will come up later and we'll be able to resolve that issue at that time. And that kind of goes into the next issue of whether this is going to open up the floodgates of litigation relating to inmate claims for the breach of this section. Mr. Blier argued that this is going to place an unduly burdensome job on the clerk. And like we just discussed, I don't think that's what's going to happen. In this case, we just need to see what numbers were transmitted. In your brief, you said interpreting the statute to only require the clerk to transmit the number provided by the sheriff is, quote, inane, unquote. How is that inane? By that I meant if... I think I may have maybe miswrote what I intended to say. If the clerk, if the sheriff... What I believe the defense argument to be is the clerk just has to transfer a number to the Department of Corrections. In this case, if the sheriff transmits 10 days, the clerk needs to transmit 10 days. If the statute just required the clerk to transmit any arbitrary number, that's what would make the statute inane. The statute says specifically the clerk has to transmit the number of days the offender is entitled to credit against his sentence, not a number of days, not any, you know, some number of days. So that's what I meant by that, and I apologize if that caused confusion. The court, the appellate court explained in Moore v. Lumpkin and other cases that an important consideration in determining whether to imply a private right of action is whether the statute is remedial. You don't contend, do you, that this is a remedial statute, do you? No, I wouldn't say so. However, I do think that they're just moving through those NOILA factors to determine whether an implied private right of action is proper, that all four of those elements are met. And I do agree that we need to be careful when implying a private right of action, but I think this is one of those instances where it is needed. Under this Court's case law, just looking at when a statute contains the word shall, right, it's considered directory rather than mandatory, right, if it doesn't provide a consequence for a failure to comply, right? You'd agree with that? Yes.  So it would be considered directory under our cases, right? I believe so. And does it seem at all incongruous to imply a private right of action for the violation of a directory statute? I would say no. I mean, if they don't do the duty properly, if there's a negligent performance of that duty, I think there needs to be a remedy. That's what we're asking for here, especially when there's no other remedy that will do the job. And that's what I think we're arguing. But just briefly looking at those NOILO factors, I don't think there's much dispute on some of the factors, specifically the first one, whether or not the plaintiff is a member of the class for the statute is intended to protect. I think the case law is clear that an adjudicated offender is a member of the class of persons the statute is designed to protect. The statute itself says that. McNeil v. Carter, which is one of the defense's main cases, says that. So I think that element is met rather easily. The second element, whether a private cause of action is consistent with the underlying purpose of the statute, again, I think the statute speaks for itself. When looking at the underlying purposes, there's four total, but two of them specifically apply to this case. One of those would be to prevent arbitrary or oppressive treatment of persons adjudicated offenders or delinquents. And the second one is to restore offenders to useful citizenship. So two of these purposes apply directly to this case. Mr. Blier mentioned that there's a part in McNeil, the McNeil case, that states the general purpose of the statute is to protect the public. But a few lines later, McNeil also states that the code was primarily enacted to provide courts with direction when imposing sentences with the desire to return an offender to useful citizenship. That, with the two purposes mentioned in the statute itself, indicate that a private cause of action is consistent with these underlying purposes. In our case, the allegations allege around 137 days that Mr. Cowper spent in prison that were unwarranted. Surely those 137 days are arbitrary and oppressive. Does it make any difference for our analysis whether it's intentional or negligent action? In this case, I would say so. I mean, in this case, we're not saying that the clerks did anything unintentional. That's why we're basing our claim on the theories of negligence. So I would say not in this case. But just wrapping that back up, just 137 days of unwarranted incarceration, I would say that's something that the private cause of action is consistent with what the purpose is, which is to prevent that kind of thing. The word prevents in the purpose, and we're trying to prevent that from happening to people. And that kind of rolls into factor number three. What specifically is this injury one of the problems that the statute is designed to prevent? Again, we see that word prevent. And prevent is one of the stated purposes, to prevent arbitrary and oppressive treatment. So the plain language of the statute's list of purposes make it clear the code was designed to prevent adjudicated offenders from being confined in prison beyond their rightful release date. The appellate court agreed in this decision and expanded on it a little bit by stating that the legislature's statutory designation of making the clerk and the sheriff responsible for the mandatory assembling and transmission of the credit against a sentence is additional evidence of the statutory intent. And taking it a little step further than that, in reviewing the legislative history of this, and I did not put this in my brief, but it is in the record on my motion to reconsider at the trial court level. The legislative history talks about, you can see the transcripts of the trial, and they specifically talk about the allotment of what's called good time credit in going against a person's sentences. So you can kind of look at that, which was back in the 70s, to see what they were thinking when they were drafting the statute, and specifically to try to prevent people from staying in prison for too long. Now the fourth and final element is the one that Mr. Blier argued most about, which is whether this is necessary to provide an adequate remedy, whether there are any other remedies. Now he spoke about the motion to recalculate time served that Mr. Copper filed while in prison. I don't believe that's an adequate remedy in this case. But moving on, the 3-8-8 grievances section, I also don't believe that would apply to this case. And looking at the cases that cite this, I think there's about eight or nine total, they all deal with grievances that occurred while a person was in prison. One deals with improper ventilation of a cell. One deals with medical treatment he was receiving while incarcerated. One deals with the medical meal plan they were put on. So these were all grievances that the inmates could have made while they were in there to try to fix them. And those grievance procedures are with the correctional facility. Now in this case, Mr. Copper, the correctional facility didn't do anything wrong in this case. If he filed a grievance, they could have said, you know, okay, we can't do anything about it. And we know they can't do anything about it because of the other case law. We have Evans v. State, Patton v. State, and even Shaw v. Germain, which touched on the fact that the Department of Corrections is duty-bound to enforce a state sentencing order. They can't unilaterally change it. So in a hypothetical grievance board review, if they said, oh, you're right, they have to follow the sentencing order. So they wouldn't have helped. So in this case, I don't believe the Section 3.8 or Dash 8-8 grievance procedures would have helped Mr. Copper at all, or they couldn't have. Mr. Blier also mentioned a case from your court, Abbasi. And that case I think is distinguishable. In this case, your court did not apply a private cause of action because they had found that one already existed. In this case, the common law theory of negligence based on the safety statute nature of the Lead Poisoning Prevention Act. In this case, the Unified Code of Corrections certainly isn't a safety statute designed to protect human life. And so I don't believe that would apply to this case. Further, Evans, Patton, and Shaw all direct a plaintiff, in this case, to go the state route, to file a claim for negligent incarceration. So although the cases are lacking other places, these cases can be directory, and this is the route you should take. So you're telling us that you believe that there is a cause of action no matter how much time is incorrectly calculated. If it's one day, two days, And the fact that this fellow served out his sentence and was released by the time that it was acted on really is not a factor, right? Yeah, I would agree. Because in your – so you're telling us that anybody that serves even one day is entitled to a cause of action. Is that right? Yes, ma'am. Thank you. Mr. Bleier discusses the McNeill v. Carter case. I just wanted to take a moment and just distinguish that just a little bit. That case, they did not find an implied private right of action, but, again, that regarded the plaintiff who alleged she didn't get proper medical treatment while in prison. There, that kind of hinged on that fourth element of whether there was another remedy, and there, that Section 3-8-8 remedy grievances section would have helped him because he was in prison, talking about problems he was having in prison, talking to the people who were allegedly causing the problem, the correctional facility. So that can be distinguished a little bit. That wouldn't apply to Mr. Cowper, as we previously discussed. So I guess I would say, in conclusion, all four of the required elements to apply a private right of action are met in this case. But if found otherwise, then the statute becomes useless as far as Mr. Cowper is concerned. There would be no remedy for him. We've discussed he didn't receive a remedy from his motion to recalculate time served. It wasn't answered until five months later or after he was already out of prison. If not here, then there would be no recourse for the injury he caused, that was caused to him. The statute itself states that one of its purposes is to prevent arbitrary and oppressive treatment of persons adjudicated offenders or delinquents. And I know I've said that a lot, but I think that's one of the most important purpose sections revolving this case. It was designed to prevent this kind of thing. So if it didn't prevent it, there needs to be a remedy. So in this case, there's no question that the plaintiff was arbitrarily and oppressively mistreated. So what is his remedy if not here? The plaintiff deserves a remedy in this matter, and this is the correct remedy. So as such, I would respectfully request that you affirm the decision of the appellate court. Do you have any other questions for me at this time? It doesn't appear so. Thank you. In closing, Your Honor, first of all, the question is to the record is clear that Mr. Cowper filed a motion to recalculate his time. For whatever reason, I don't get a lawyer. For whatever reason, I don't know why he did not pursue that, the lawyer. But as a matter of fact, I know that this honorable court has a case. The last time I was here, it was Keener v. Herron. It basically, there's a duty on his lawyer to make sure that things, that you check the clerk to see if things are being handled. Check the court file to make sure things are filed. And it's upon him and his attorney to proceed that. Do we have any of that information in this record? Do we know what happened to that motion? No, we don't. So in the record, we don't know what happened. That is correct. He filed it, and the next thing we know is that five months later, the state responded. We don't know what happened in the end. That is correct. You're correct. There's nothing in the record as to what happened. The only thing in the record, and it's clear enough, is that he did file the motion. And I think that's the remedy that he had. And why he or his attorney did not respond to it or follow up with it, I don't know. He didn't have an obligation to respond to it, obviously. The state didn't respond for five months. I'm sorry. I mean, the lawyer didn't follow up with the court to try to bring it to their attention. I don't know. But that itself is not, I mean, that's his remedy to me. Now, again, you argued, that's not what you argued in your brief. In your brief, if I might, if I might. In your brief, your conclusion is that because the adequate remedy was 730 ILCS 53-88, it is unnecessary to infer a prior right of action. That was your argument. That is correct. Inclusion paragraph. It's been argued here that even if he had filed a grievance while he was in custody, the Department of Corrections could not give him a remedy because if the Department of Corrections receives a certain amount of days, that's what's sent to them, that they have to keep him in that long. So he could not be given a remedy under the section that you have provided here in your brief. If you look at the cases, I think it's the Patton case. It does talk about the Department of Corrections giving a person a remedy under that section where when they knew or should have known that something was incorrect, the Department of Corrections was under the obligation to follow up with it. As a matter of fact, I think that's one of the two court claim cases where they gave him money because the Department of Corrections knew that he was being held beyond the time and did not do anything to follow up with it. What is the name of that case, sir? That was the Patton case, I believe, or the Shaw case. I'm trying to… That was the Patton v. Delroy case, the court claims case, cited in the Eppley's brief. You didn't cite that case? No, no. But to answer your question, the Department of Corrections did, under that case, have an obligation to, under the grievance procedure, to do something because they talked about the Department of Corrections knew or should have known that his calculation was incorrect in that Patton case. And I think that if you follow the cases that are cited by this court, the Fischer and the Abbasi… Wait, didn't the Patton case say that the IDOC could not be found negligent as it confined the plaintiff pursuant to the information provided by the clerk and the sheriff? Instead, the clerk, the county sheriff, and clerk caused the plaintiff's injury. Isn't that the whole name of the Patton case? No, they awarded him money because at the end they talked about that in this modern day of emails and things of that nature, that the Department of Corrections should have known that his time was served. It's towards the end of the opinion. And I think based upon the two cases of this Supreme Court and the Menil case that there is no private right cause of action and this court should reverse the Fifth District Appellate Court and affirm the trial court. Thank you. Case number 117811, DeAngelo M. Cowper v. Randy Nyberg, etc., et al. will be taken under advisement as agenda number seven. Mr. Blyer and Mr. Flynn, thank you for your arguments today, your excuse at this time. Mr. Marshall, the Supreme Court will take a ten-minute recess.